UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Nathaniel J. Richardson, Jr.,                 Case No. 3:14-cv-01415

        Plaintiff

v.                                              MEMORANDUM OPINION
                                                 AND ORDER

Unit Manager Rupert, et al.,

        Defendants

### BACKGROUND AND HISTORY

*Pro se* Plaintiff Nathaniel J. Richardson, Jr. filed this prisoner civil rights action under 42 U.S.C. § 1983 against Toledo Correctional Institution ("ToCI") Unit Manager Rupert, ToCI Unit Manager Waters, ToCI Lieutenant Lay, ToCI Institutional Inspector Brown, Two Unknown Staff Members Who Were on the Use of Force Committee, and the Unknown Corrections Officer who monitored Plaintiff while he was on suicide watch. In the Complaint, Plaintiff contends the Defendants did not follow proper protocol when he declared he was suicidal and going on a hunger strike. He asserts claims for use of excessive force in violation of the Eighth Amendment, conspiracy to use excessive force, denial of his right to fair disposition of his grievance, and numerous violations of Ohio Department of Rehabilitation and Correction ("ODRC") policies. He seeks monetary damages.

**BACKGROUND**

Plaintiff alleges that for several months, he had a two-man cell to himself. He contends he instructed Unit Manager Rupert to consider the fact he snores loudly before moving another inmate into the cell with him. On July 29, 2013, Rupert moved inmate Randolph into the cell with Plaintiff. Plaintiff alleges that two days later, Randolph complained to Lieutenant Pettaway and to Plaintiff that Plaintiff's snoring was keeping him awake at night. Pettaway indicated he informed Rupert and Sergeant Jackson about the situation.

Plaintiff states he went to Rupert's office that day at 1:00 p.m. to speak with him about his new cellmate. He contends Rupert stopped him at the door, indicating he did not wish to discuss the matter. Plaintiff walked to an area where the cell blocks converge and saw Sergeant Jackson. He told Jackson that Randolph was upset by his snoring and asked the Sergeant to move Randolph to another cell. Jackson told him that Randolph would remain in the cell until at least Tuesday. Plaintiff said it was an emergency and Jackson responded that he did not care and Plaintiff should "deal with it." (Doc. No. 1 at 6). Plaintiff continued by questioning whether Jackson cared if he got hurt, and Jackson allegedly replied, "no."

Plaintiff then immediately told Jackson he was suicidal, needed to go on suicide watch and that he was going on a hunger strike. He claims at that point, ODRC policy requires the officer to take him to the Mental Health Department where he would be given a private room and monitored. He contends the Deputy Warden is to be notified of the potential hunger strike. Instead, Jackson did not consider his statement to be sincere, and told him to go back to his cell. Plaintiff refused and repeated that he was suicidal and going on a hunger strike. Jackson then waved Plaintiff aside and told him to go and stand against the wall. Plaintiff claims after a period of time, Jackson left the area; however, Plaintiff remained standing against the wall and did not return to his cell. He indicates he stood in this location for approximately an hour.

At that point, Rupert, Lieutenant Lay, and Unit Manager Waters came to the area and walked past Plaintiff.  Rupert turned around and asked Plaintiff what he was still doing there.  Plaintiff stated again he was suicidal, needed to go on suicide watch, and was going on a hunger strike.  Plaintiff claims the proper protocol required Rupert, Lay, and Waters to take him to the mental health department where he would be given a private cell and monitored continually.  Instead, they told him to go back to his cell.  Plaintiff said he would not return to his cell and repeated that he was suicidal, needed to go on suicide watch, and was going on a hunger strike.  Again, they told him to go back to his cell.  Plaintiff responded by saying, "What are you going to do? Force me to go to my cell?"  He claims Lieutenant Lay then replied he would do just that and grabbed Plaintiff's arm stating he was taking him back to his cell.  Plaintiff pulled away and said, "get off me." (Doc. No. 1 at 8).  At that point, Waters sprayed Plaintiff with pepper spray.  Plaintiff states Lay and Waters picked him up and walked him to a holding cell in segregation.  He alleges Lay and Waters taunted him, saying things like, "it hurts, doesn't it?" and "I bet you won't do that again." (Doc. No. 1 at 9).  He claims the pepper spray made his face feel like it was on fire.

Plaintiff contends that a nurse came to see him approximately forty-five minutes after he was sprayed.  She told him the effects of the pepper spray would dissipate over time.  He told her he felt tightness in his chest.  She conducted testing and indicated she would pass the results on to the doctor.  He was taken back to segregation where he remained in the holding cell for three hours.  He was then taken to a cell in segregation.

Later that night, Plaintiff told a corrections officer he was suicidal and needed to go on suicide watch.  Lieutenant Brown was summoned and questioned why Plaintiff needed to be on suicide watch.  Plaintiff stated he did not "feel right mentally."  Lieutenant Brown placed him on suicide watch in a "safe cell."  He was taken off of constant watch the following day, and off of close watch five days later.  He also went on a hunger strike from July 31, 2013 to August 3, 2013.

He claims the officer monitoring him did not notify the Deputy Warden of his hunger strike.  He was moved out of the safe cell and into a regular cell five days after he was placed there.

Lieutenat Lay issued a conduct report against Plaintiff claiming he physically refused a direct order.  Plaintiff disputes the accuracy of Lay's reporting of the incident.  He, however, was transferred to the Madison Correctional Institution before the Rules Infraction Board hearing could take place.  The charges were dropped.

### PLAINTIFF'S CAUSES OF ACTION

Plaintiff asserts multiple causes of action, which can be condensed into four claims.  First, he contends Waters's use of pepper spray constituted use of excessive force in violation of the Eighth Amendment.  Second, he claims Rupert, Lay, and Jackson conspired with Waters to use excessive force against him.  Third, he alleges the Institutional Inspector denied him a fair disposition of his grievance.  Finally, he claims the Defendants failed to follow numerous ODRC regulations and procedures when dealing with an inmate who claimed to be suicidal or on a hunger strike.

### STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless.  *Neitzke*, 490 U.S. at 327.  A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

## ANALYSIS

Plaintiff first alleges that Waters used excessive force against him by spraying him with pepper spray. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). This, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Id.* In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute serious health threats, but does address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual

punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In the context of an excessive force claim, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *See Whitley*, 475 U.S. at 327. That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Hudson*, 503 U.S. at 9; *Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The standard applied when prison officials are accused of using excessive physical force in violation of the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7, 10. An official's decision to use force is entitled to deference:

> [O]fficials confronted with a prison disturbance must balance the threat [that] unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force. Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed

6

>   to preserve internal order and discipline and to maintain institutional security.

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002).  The issue is therefore not whether the use of force was absolutely necessary in hindsight, but "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321; *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

In this case, the facts alleged do not suggest the force used against Plaintiff was excessive. Plaintiff asked Rupert to move Randolph to another cell and return Plaintiff to a private cell. When Rupert refused the request, Plaintiff sought out Jackson. He asked Jackson to move his cellmate to another and return Plaintiff's private cell. Jackson refused. Plaintiff declared he was suicidal and needed to be placed in a private safe cell for observation. Jackson ordered him to return to his cell, and Plaintiff refused. Jackson left the area leaving Plaintiff standing against the wall. Plaintiff remained there for an hour refusing to return to his cell and demanding to be placed in a private cell under suicide watch. He was eventually approached by Lay, Rupert, and Waters. They listened to Plaintiff's complaints and then ordered him twice to return to his cell. He refused and asked Lay, "What are you going to do? Force me to go to my cell?" Lay indicated he would do so and grabbed Plaintiff's arm to escort him back to his cell. Plaintiff pulled away from Lay and said, "get off me." (Doc. No. 1 at 8). At that point, Waters sprayed Plaintiff with pepper spray. Plaintiff immediately was subdued with the pepper spray, and was then escorted to segregation.

None of the facts suggest the pepper spray was used to maliciously cause him pain. Instead, it appears to have been applied as a last resort in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. 1, 5-6.  After Plaintiff was subdued with the pepper spray, no other force was applied. While the pepper spray caused Plaintiff discomfort in the ordinary fashion of persons exposed to pepper spray, its use in this instance did not constitute excessive force and did not satisfy

7

the objective component of an Eighth Amendment claim. *See Jennings v. Mitchell*, No. 03-1922, 2004 WL 504352, 1 (6th Cir. Mar. 12, 2004)(use of pepper spray on inmate who refused repeated direct orders to exit the shower area was not excessive force); *Siggers v. Renner*, No. 01-4067, 2002 WL 847986, 1 (6th Cir. Apr. 30, 2002)(finding that an inmate may not refuse a direct order merely because he disagrees with a guard's interpretation of a prison regulation, and the guard's use of force in response to the inmate's refusal to obey direct orders to exit the cell was a direct threat to the security of the institution).

Because Plaintiff failed to state a claim under the Eighth Amendment for use of excessive force, he also failed to state a claim that the Defendants conspired to violate his Eighth Amendment rights. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Weberg v. Franks,* 229 F.3d 514, 526 (6th Cir. 2000). To state a claim for civil conspiracy under § 1983, Plaintiff must allege facts suggesting that the Defendants agreed to violate his civil rights; that the defendants shared in the conspiratorial objective; and that an overt act was committed in furtherance of the conspiracy. *See Id.* Conspiracy claims must be pled with some degree of specificity. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Id.*; *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987). A Plaintiff must allege sufficient factual allegations to link the alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds). Moreover, because he is asserting this claim under § 1983, Plaintiff's conspiracy claim is dependent on his succeeding on his Eighth Amendment excessive force claim. *See Torres-Rosado v. Rotger-Sabat,* 335 F.3d 1, 14 (1st Cir. 2003) ("To demonstrate conspiracy under § 1983, Plaintiff must show an actual abridgement of some federally-secured right." (internal quotations omitted)); *Vaden v. Village of Maywood, Ill.,* 809 F.2d 361, 366 (7th Cir.

8

1987) ("To state a claim for relief under [§ 1983], [Plaintiff] must allege not only that the Defendants conspired under color of state law to deprive her of her constitutional rights, but also that she was in fact deprived of those rights.").

Plaintiff did not plead this claim with specificity to show a conspiracy and did not allege facts to suggest Waters applied excessive force. He does not allege facts to suggest the Defendants had a meeting of the minds to use force against him. Furthermore, even if these Defendants had discussed how they would get Plaintiff back to his cell, they did not use excessive force to accomplish this task. Plaintiff failed to state a claim against these Defendants for conspiring to violate his constitutional rights.

Plaintiff next asserts the Institutional Inspector rejected his grievance stating it was not within the scope of the grievance procedure because it was reported as a use of force under Administrative Rule 5120-9-02. First, Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts consistently have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, No. 04-1347, 2005 WL 742743 (6th Cir. Apr. 1, 2005); *Young v. Gundy*, No. 01-2111, 2002 WL 373740 (6th Cir. Mar. 7, 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb.7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Furthermore, responding to a grievance or otherwise participating in the grievance procedure is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). Plaintiff cannot hold the Institutional Inspector liable for another officer's alleged use of excessive force based solely on the Institutional Inspector's denial of his grievance.

Finally, Plaintiff claims the Defendants failed to follow numerous ODRC regulations and procedures when dealing with an inmate who claimed to be suicidal or on a hunger strike. The

9

prison's failure to follow its own institutional guidelines concerning the procedure to follow when an inmate declares he is suicidal or on a hunger strike, standing alone, does not implicate due process. "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993); *see Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Prison officials receive "wide-ranging deference in the adopting and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). Plaintiff fails to state a claim upon which relief may be granted based on the Defendants' failure to comply with the ODRC policies.

## CONCLUSION

Having considered and examined the *pro se* Plaintiff's pleading to determine its legal viability, I conclude it fails to state a claim upon which relief may be granted. Therefore, this action is dismissed pursuant to 28 U.S.C. § 1915(e). Further, I certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this decision cannot be taken in good faith. This case is closed.

So Ordered.

                                                s/Jeffrey J. Helmick
                                                United States District Judge